# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAUL J. MCMANN, | ) | |
| EILEEN R. MCMANN, individually | ) | **COMPLAINT** |
| And on behalf of all others | ) | |
| Similarly situated | ) | **CLASS ACTION** |
| | ) | |
|        Plaintiffs, | ) | **Case No.:** |
| | ) | |
| vs. | ) | |
| | ) | |
| CHARLES BAKER, JR. Governor of | ) | |
| Massachusetts, in his official | ) | |
| Capacity; STEPHANIE POLLACK, | ) | |
| Secretary of Transportation, in | ) | |
| her official Capacity; ERIN | ) | |
| DEVENEY, Registrar at | ) | |
| Massachusetts Department of | ) | |
| Transportation, in her official | ) | |
| Capacity; CHRISTOPHER C. HARDING, | ) | |
| Commissioner of the Massachusetts | ) | |
| Department of Revenue, in his | ) | |
| Official capacity; CHARLES BORSTEL, | ) | |
| Director of the Division of | ) | |
| Professional Licensure, in his | ) | |
| Official capacity; and MAURA HEALY, | ) | |
| Attorney General, Commonwealth of | ) | |
| Massachusetts, in her official | ) | |
| Capacity, | ) | |
| | ) | |
| | ) | |
|        Defendants. | ) | |

FILED
IN CLERKS OFFICE
U.S. DISTRICT COURT
DISTRICT OF MASS.
2018 JUL 23 PM 2: 52

---

Plaintiffs Paul J. and Eileen R. McMann, husband and wife, on behalf of themselves and all other similarly situated brings this class action COMPLAINT against defendants CHARLES BAKER, JR., STEPHANIE POLLACK, ERIN DEVENEY,

1

CHRISTOPHER C. HARDING, CHARLES BORSTEL, and MAURA HEALY individually and collectively, and as grounds, state as follows:

## I.    Jurisdiction

1. This is a civil rights action arising under 42 U.S.C. § 1983, 28 U.S.C. §§ 2201-2202, and the Fourteenth Amendment to the United States Constitution.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 because this action arises under the Constitution and laws of the Unite States; and because it seeks to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to the named plaintiffs and class members by the Constitution and laws of the United States.

3. This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the named plaintiffs' claims occurred in this judicial district, or a substantial part of the property

that is the subject of this action (namely, the Plaintiff's driver's licenses, vehicle registration and professional license) is situated in this judicial district.

## II.  Parties

5.    Plaintiffs **Paul J. and Eileen R. McMann** (hereinafter collectively the "McManns") are residents of the Commonwealth of Massachusetts, are over the age of majority, and reside in Weston, Massachusetts.

6. Defendant **CHARLES BAKER, JR.** is Governor of the Commonwealth of Massachusetts.  He is sued in his official capacity.

7. **STEPHANIE POLLACK** is Secretary of Transportation for the Commonwealth of Massachusetts.  She is sued in her official capacity.

8. **ERIN DEVENEY** is Registrar at Massachusetts Department of Transportation, Registry of Motor Vehicles Division. She is sued in her official capacity.

9. **CHRISTOPHER C. HARDING** is Commissioner of the Massachusetts Department of Revenue.  He is sued in his official capacity.

3

10.    **CHARLES    BORSTEL**    is    Commissioner    of    the Massachusetts Division of Professional Licensure.  He is sued in his official capacity.

11.    **MAURA    HEALY**    is    Attorney    General    for    the Commonwealth  of  Massachusetts.    She  is  sued  in  her official capacity.

## III. Introduction

12.    Whenever    people    in    the    Commonwealth    of Massachusetts are unable to pay their state taxes, their driver's license, vehicle registration and professional licenses  are  revoked  by  the  Commonwealth  without  any inquiry into whether they are able to pay the debt.

13.    These  revocations,  mandated  by  Massachusetts  law, dramatically   impair   the   ability   of   impoverished Massachusetts residents to meet the basic necessities of life   in   addition   effectively   confiscating   property without compensation.

14.    Without   their   driver's   licenses,   Plaintiff   and class members have difficulty grocery shopping, going to the  doctor,  attending  church,  caring  for  and  spending time  with  family  members,  taking  their  children  to

school, and participating in other fundamental aspects of daily life.

15.    In addition, the revocations deprive indigent people of a key tool for finding and keeping a job or even being able to work some jobs where the individuals are licensed.

16.    The revocations of the Plaintiff's driver's licenses, professional license and vehicle registration are the equivalent of a modern day debtor's prison.

17.    Debtor's prison is illegal in most of the world.

18.    The United States abolished incarceration of people who fail to pay off debts in 1833.

19.    Poverty is not a crime.

20.    Without being able to work, people cannot earn enough money to pay or make an arrangement to pay the back taxes.  The statutory scheme traps only the poorest debtors in a cycle of debt, poverty and alienation from their community.

21.    Research has consistently found that possession of a valid driver's license is often essential for people to secure and maintain employment, and the loss of a driver's license often results in hardship for individuals and their families.

22.    Research has also consistently found that having a driver's license can be crucial to an individual's ability to maintain a job, pursue educational opportunities, and care for family[1].

23.    Under Massachusetts General Laws Chapter 62C Section 47B ("the Statutes"), the Registry of Motor Vehicles may suspend/revoke a citizen's driver's license and/or vehicle registration indefinitely if they fail to pay state taxes to the Department of Revenue Collections Bureau.

24.    The RMV mails a suspension notice to the citizen's address on file stating that his or her driver's license and/or vehicle registration will be suspended 10 days form the date the suspension notice was issued.

25.    The suspension notice is sent by the RMV without considering evidence of the citizen's indigency or their inability to pay.

26.    If the citizen fails to pay the state taxes demanded by the Department of Revenue Collections Bureau before the date listed on the suspension notice, the RMV will suspend/revoke the driver's license and/or vehicle registration indefinitely until the obligation is paid.

---

[1] See "Letter to Colleague" from Vanita Gupta & Lisa Foster, U.S. Department of Justice (Mar. 14, 2016).

27.    Because   of   their   financial   circumstances,
Plaintiffs and class members could not or will not be
able to pay back taxes to the Commonwealth, and thus
their  driver's  licenses,  vehicle  registrations  and
professional licenses have been or will be automatically
revoked without consideration of their ability to pay
the assessed taxes.

28.    Once their licenses and vehicle registrations are
revoked, Plaintiffs and class members incur additional
costs in the form of substantial reinstatement fees that
Defendants require them to pay in order to regain their
right to drive, register their vehicle or reinstate
their  professional  license.   Plaintiffs  and  class
members cannot afford to pay the reinstatement fees and
thus are unable to regain license or the use of their
property.

29.    Suspending and/or revoking driver's licenses as a
means of debt collection puts public safety at risk, a
goal that is in direct opposition to the Commonwealth's
obligation  to  provide  public  safety,  because  law
enforcement   resources   are   devoted   to   stopping,
investigating, and prosecuting suspended drivers who do
not present a danger behind the wheel instead of pursuing
individuals who do present a danger behind the wheel.

30.    A report by the American Association of Motor Vehicle Administrators (AAMVA), *Best Practices Guide to Reducing Suspended Drivers*, the AAMVA concluded that suspending driver's licenses for reasons unrelated to traffic safety increases the threat to public safety by diverting law enforcement officers' time from more important activities like responding to 911 calls, investigating crashed, and investigating more serious crimes[2].

31.    Public safety also is put at risk when formerly incarcerated persons leave prison or jails with licenses that have been suspended due to tax debt, and who are therefore, often, without a source of legal, reliable transportation for finding and maintaining a job.

32.    Even more significant is that this automatic suspension/revocation of driver's licenses for failure to pay tax debts affect not only the debtors themselves but also their families, especially their minor children who need to be brought to and from school or to medical appointments for their healthcare.

33.    The McMann's have minor children at home.

---

[2] Available from: https://www.aamva.org/Suspended-and-Revoked-Drivers-Working-Group/

34.    The loss of a driver's license often results in personal and family hardship such as reduced employment and educational opportunities, reduced capacity to care for one's family, increased barriers to successful reentry after imprisonment, and increased indebtedness due to interests.

35.    While debtors whose driver's licenses were suspended can use public transportation, this is challenging and time-consuming: not all jobs are accessible by public transportation, with traffic and road conditions, travel by public transportation takes more time.

36.    The Statutes violate the Due Process and Equal Protection Clauses because it is fundamentally unfair to deprive a person of the privilege to drive for failure to pay state income taxes owed (1) without requiring that the Commonwealth first determine whether the person has the ability to pay the debt, and (2) without providing a notice and an opportunity to be heard in connection with the revocations.

37.    The Statutes violate the Equal Protection Clause in another way: it subjects people owning tax debt to unduly harsh and discriminatory treatment as compared to

others, as prohibited by the U.S. Supreme Court in *James v. Strange*, 407 U.S. 128 (1972).

38.    Accordingly, Plaintiffs and class members seek a declaratory judgment that the Statutes are unconstitutional.

39.    Plaintiffs also seek an injunction preventing Defendants from enforcing the Statutes.

40.    And Plaintiffs seek an order directing Defendants to reinstate all driver's licenses, professional licenses and vehicle registrations that were automatically revoked pursuant to the Statutes.

41.    This is an action arising under state and federal law and seeks temporary, preliminary and permanent injunctive relief, as well as compensatory, statutory, and exemplar and punitive damages and attorney's fees. Specifically, the McManns' claims arise under Massachusetts law and the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Truth in Lending Act ("TILA").

IV.    **Factual Allegations**

42.    Prior to 2008, Paul McMann and his wife Eileen McMann were engaged in the business of real estate

10

development. They incurred a tax debt to the Commonwealth of Massachusetts that he could not pay.

43.    At the time, the complainant Paul McMann's business was highly leveraged. This was also the time when the real estate market softened. The McManns lost most of the development and rental properties they owned.

44.    After the real estate loses, Paul McMann's financial difficulties were compound as he has had difficulties getting work because of an incarceration.

45.    The McManns have four children, currently ranging in ages from 11 to 22.

46.    Three of the McManns' children currently reside with them.

47.    One of the McManns' children who is residing with them, is unmarried and pregnant with the father not participating in the pregnancy.

48.    Since their losses in 2008, the McManns have had a difficult time making ends meet.

49.    The McMann's have not been able to pay their mortgage in the last 8 years.

50.    Paul McMann is currently unemployed.

51.    Eileen McMann is currently attending college, being retrained as a respiratory therapist.

52.    Paul  McMann's  previous  job  as  a  sales
       representative for a commercial solar company required
       that he be able to drive and visit prospects and clients.

53.    Paul McMann could not use public transportation for
       his previous job as a commercial solar sales person as
       many of his prospects and clients were not on public
       transportation.

54.    At the end of each month, after they pay their
       bills, the McManns usually have less than $200 cash left.

55.    In  2012,  Eileen  McMann  filed  a  Chapter  7
       Bankruptcy. Her debts were discharged.

56.    In 2011, Paul McMann filed a Chapter 13 Bankruptcy
       which was dismissed.

57.    In 2014, Paul McMann filed a Chapter 7 Bankruptcy
       which as dismissed.

58.    In  2015,  Paul  McMann  again  filed  a  Chapter  13
       Bankruptcy which was also dismissed.

59.    In 2016, Paul McMann filed a Chapter 13 Bankruptcy.
       He received some relief when his debts were discharged.

60.    In  2017,  Paul  McMann  again  filed  a  Chapter  13
       Bankruptcy which was dismissed.

61.    During  the  various  bankruptcy  filings,  Paul
       McMann's driver's license was reinstate as federal law

prohibits the Commonwealth's debt collection practice while in a citizen is in bankruptcy proceedings.

62.    On June 24, 2018, Paul McMann learned that his driver's license was revoked by the Massachusetts Registry of Motor Vehicles.  The revocation was because of state taxes owed.

63.    Paul McMann's driver's license was not revoked due to poor driving.

64.    Paul McMann's driver's license was not revoked due to a public safety issue.

65.    The Commonwealth had no hearing regarding Paul McMann's ability to pay the state taxes he owed.

66.    On May 10, 2018, upon attempting to renew her driver's license, Eileen McMann learned that her driver's license was revoked by the Massachusetts Registry of Motor Vehicles.

67.    Eileen McMann's driver's license was revoked because state taxes were owed by her.

68.    Eileen McMann's driver's license was not revoked due to poor driving.

69.    Eileen McMann's driver's license was not revoked due to a public safety issue.

70.    The Commonwealth had no hearing regarding the suspension of Eileen McMann's license or her ability to pay the state taxes she owed with her husband Paul.

71.    On February 12, 2018, Paul McMann learned that the Division of Professional Licensure revoked Paul McMann's real estate license, as well.

72.    Paul McMann's real estate license was revoked because he owed state taxes.

73.    Paul McMann's real estate license was not revoked because of some infraction of his professional responsibilities as a licensed real estate salesperson in the Commonwealth.

74.    There was no hearing regarding the revocation of Paul McMann's real estate license.

75.    There was no inquiry into Paul McMann's ability to pay the state taxes he owed before his real estate license was revoked.

76.    Paul McMann had opportunities to practice and sell real estate after his real estate license was revoked, but he could not work or take advantage of the opportunities because his real estate license was suspended.

14

77.    On June 11, 2018, Paul McMann learned that in days, the Registry of Motor Vehicles would be revoking the registration on Paul McMann's vehicle.

78.    Paul McMann's vehicle registration was revoked because he owed state taxes.

79.    Paul McMann's vehicle registration was not revoked due to non-payment of insurance.

80.    Paul McMann's vehicle registration was not revoked due to a public safety issue.

81.    The Commonwealth had no hearing regarding Paul McMann's ability to pay the state taxes he owed before revoking his vehicle registration.

82.    Three of the McManns' children have driver's licenses in the Commonwealth of Massachusetts.

83.    Two of the McMann's children do not have vehicles.

84.    Prior to the vehicle registration being revoked, all three of McManns' children have driven the vehicle whose registration was revoked.

85.    The McMann's daughter who lives at their home is pregnant and neither of the McManns would be able to take her to the hospital when the baby is due.

86.    Because of the vehicle registration revocation, the vehicle cannot legally be used by his children or anyone else who is licensed to drive.

87.    The Commonwealth has placed the McManns' names on a national database regarding the suspension of their driver's licenses.

88.    Because the McManns' names are on a national database with their driver's license revocations, the McMann's are unable to move to a new state and obtain new licenses.

89.    One of the principle purposes of a state regulating driver's licenses and vehicle registration are public safety.

90.    The McMann's did not violate any public safety regulation that would warrant the revocation of their driving privileges or the use of their vehicle.

91.    More importantly, the McManns' driver's licenses were suspended by the defendants immediately upon their default without inquiring into their individual financial circumstances, or the reasons underlying their failure to pay their taxes.

92.    The Defendants do not and did not conduct a review of a person's financial condition prior to or indeed at any point related to suspending a person's driver's license for failure to pay, or otherwise inquire as to the reasons for the default in tax payment.

93.    The Defendants employ hearing officers who conduct informal fact-finding proceedings when taking adverse action against a driver's license holder for other reasons such as when a license is about to be suspended due to medical impairment.

94.    The Defendants will not reinstate the McManns' licenses until they satisfy their tax debt entirely, or obtain payment plans.

95.    The McManns are current on their state tax filings with the Commonwealth of Massachusetts.

96.    The McManns' earnings for the last three years are known by the Massachusetts Department of Revenue.

97.    The Massachusetts Department of Revenue, based on filed tax returns, has the ability to assess the McMann's ability to pay their state tax debt.

98.    The McManns are not able to enter into or maintain payment plans with the Commonwealth of Massachusetts because the payment plans do not take into consideration their individual financial circumstances.

99.    The McManns were not offered community service, or any other alternatives that would enable them to reinstate their licenses, and they are not eligible for restricted or hardship licenses.

100.    The McManns would pay their tax debts and apply to have their licenses reinstated if they could afford to do so, but they have been unable to acquire the resources to pay and have suffered considerable hardship as a result.

101.    There is no hardship provision in the Commonwealth for driver's who have lost their driver's license as there is with other driver's who have lost their driver's license for public safety infractions.

102.    The Commonwealth recognizes financial hardship burdens for public safety violations, but not for situations where monies are due it.

103.    The McManns' debts continue to increase daily, as interest on the tax debt accrues.

## CLASS ACTION ALLEGATIONS

104.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 (b) (2) on behalf of a class defined as: (1) all persons whose Massachusetts driver's licenses have been or will be revoked pursuant to the Statute and who, at the time of the revocation, cannot or could not pay state taxes due to their financial circumstances, (2) all persons whose Massachusetts professional licenses

have been or will be revoked pursuant to the Statute and who, at the time of the revocation, cannot or could not pay state taxes due to their financial circumstances, and (3) all persons whose Massachusetts vehicle registrations have been revoked pursuant to the Statute and who, at the time of the revocation, cannot or could not pay state taxes due to their financial circumstances.

105.    This class is so numerous that joinder of all members is impractical.

106.    According to a study published by the National Highway Traffic Safety Administration in January 2009, the Commonwealth of Massachusetts has 5,000,000 licensed drivers and 54,000 licenses are suspended[3].

107.    There are no published statistics on the number of driver's licenses specifically suspended in Massachusetts for tax debt.

108.    Paul McMann estimates that more than 1,000 people have had their driver's licenses revoked pursuant to the Statute, a majority of whom were too poor to pay the state taxes.

---

[3] Available from: https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/811092_driver-license.pdf

109.    Class    members    are    geographically    disbursed throughout the Commonwealth of Massachusetts.

110.    There are numerous questions of fact and law common to the class, including:

a. Whether the Statute is fundamentally unfair because it deprives Plaintiffs of the privilege to drive solely because of their poverty and inability to pay debt owed to the Commonwealth.

b. Whether the Statute violates the Due Process because it does not afford Plaintiff and class members notice and an opportunity to be heard in connection with the revocation of their driver's licenses, professional licenses or vehicle registration.

c. Whether the Statute violates the Due Process and Equal Protection Clauses because it mandates the automatic revocation of driver's licenses from Plaintiffs and class members without considering whether they have the ability to pay.

d. Whether the Statute violates the Equal Protection Clause because it treats people who have unpaid state taxes unduly harshly by mandating the revocation of their driver's licenses without

20

consideration of their ability to pay — a consequence not possible for other debtors.

111.    The individual plaintiff's claims are typical of the claims of the class in that all of the named plaintiffs have had their driver's licenses revoked for failure to pay state income tax, and all the named plaintiffs could not pay their state tax debt because of their indigence.

112.    Declaratory and injunctive relief is appropriate with respect to the class as a whole because defendants have acted on grounds applicable to the class.

113.    Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.


**FIRST CAUSE OF ACTION**

*Violation of Due Process and Equal Protection — Fundamental Fairness*


114.    The Statute's mandatory revocation of people's driver's licenses because they are too poor to pay state tax debt without any inquiry into their ability to pay violates the right to fundamental fairness guaranteed by

the Fourteenth Amendment to the United States Constitution.

115.    The suspension or revocation of driver's licenses was meant to penalize those who although able to pay taxes, refuse to pay taxes or are unwilling to pay taxes. It was not meant to also penalize those who are willing to pay taxes but are unable to do so because of their indigency.

**SECOND CAUSE OF ACTION**

*Violation of Due Process – Notice and Opportunity to be Heard*

116.    The Statute's mandatory and automatic revocation of people's driver's licenses, professional licenses and vehicle registration without providing them notice and an opportunity to show that they are unable to pay the state tax debt violates the right to procedural fairness guaranteed by the Fourteenth Amendment to the United States Constitution.

117.    Notice and hearing are the most basic tenets of fair play and they are deprived of the barest fairness by depriving them of the opportunity to contest the suspension or revocation of their licenses by presenting proof that they are willing to pay but are currently unable to pay taxes.

22

## THIRD CAUSE OF ACTION

### *Violation of Equal Protection Clause*

118.    The mandatory revocation of driver's licenses,
professional licenses and vehicle registrations from
indigent state tax debtors, but not from other
debtors, violates the right to equal protection under
the law guaranteed by the Fourteenth Amendment to the
United States Constitution.

119.    The Commonwealth of Massachusetts allows for
hardship licenses for have violated public safety,
such as driving drunk, thus granting people whose
driver's licenses have been suspended the privilege of
driving under restrictions

120.    Hardship license does not extend to people
similarly situated as the plaintiffs – people whose
licenses have been suspended and/or revoked for tax
debt.

121.    Hardship licenses are available only for those
who have been convicted of a first offense of
Operating under the Influence, for multiple offenses
of Operating Under the Influence, for Drug Offenses,
for habitual traffic offenders.

**FOURTH CAUSE OF ACTION**

122.    The Plaintiffs seek declaratory and injunctive
relief against the defendants to address and remedy
the systemic, pervasive, and ongoing failure of the
Commonwealth of Massachusetts to provide basic
protections afforded by the Due Process and Equal
Protection Clauses of the United States Constitution
before taking the harsh enforcement measure of
suspending driver's licenses against indigent people
whose poverty prevents them from paying tax debts owed
to the Commonwealth of Massachusetts.

**REQUEST FOR RELIEF**

WHEREFORE, plaintiffs and class members request that the
Court enter a judgment in favor of plaintiffs and the class
they represent as follows:

a. Certify this case as a class action pursuant to Fed.
R. Civ. P. 23(a) and (b)(2);

b. Declare that the Statute violates the Due Process and
Equal Protection Clauses of the Fourteenth Amendment
to the United States Constitution;

c. Enjoin Defendants from revoking driver's licenses
pursuant to the Statutes and

d. Enjoin Defendants to

24

(i)     reinstate all driver's licenses, professional licenses and vehicle registrations that have been revoked pursuant to the Statute;

*(ii)*    waive all reinstatement fees for people whose driver's licenses were revoked pursuant to the Statute;

*(iii)*   notify all persons whose licenses and vehicle registrations were revoked of their reinstatement; and

*(iv)*   provide an accounting of all reinstatements made;

e. Award litigation costs and reasonable attorney's fees as provided by 42 U.S.C. § 1988; and

f. Award such other relief as the court deems just and proper.

Dated the *23* day of *July* , 2018.

**The McManns and the Class request a trial by jury.**

Respectfully submitted

Paul J. McMann
Pro Se

Eileen R. McMann
Pro Se

178 Boston Post Road
Weston, MA 02493

Tel. (781) 436-2414 (Paul)
Tel. (617) 839-1931 (Eileen)

Email: pauljmcmann@gmail.com
        eileenmcmann@comcast.net

26

COUNTY of  *Middlesex*   }

   }

STATE OF MASSACHUSETTS   }


I hereby certify that on this the *23* day of *July*, 2018, personally appeared before me PAUL J. MCMANN and EILEEN R. MCMANN, and, after first being duly sworn, did execute the forgoing.

ALLA OVECHKIS
Notary Public
Commonwealth of Massachusetts
My Commission Expires June 15, 2023

_____
Notary Public


MY COMMISSION EXPIRES: _____.

27