# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAUL J. McMANN, EILEEN R. MCMANN, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 18-cv-11550-LTS |
| CHARLES BAKER, JR., in his official capacity as Governor of Massachusetts; STEPHANIE POLLACK, in her official capacity as Secretary of Transportation; ERIN DEVENEY, in her official capacity as Registrar at Massachusetts Department of Transportation; CHRISTOPHER C. HARDING, in his official capacity as Commissioner of the Massachusetts Department of Revenue; CHARLES BORSTEL, in his official capacity as Director of the Division of Profession Licensure; and MAURA HEALEY, in her official capacity as Attorney General of the Commonwealth of Massachusetts, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

# MEMORANDUM OF LAW IN SUPPORT
# OF DEFENDANTS' MOTION TO DISMISS

MAURA HEALEY
ATTORNEY GENERAL

Elizabeth A. Kaplan, BBO #568911
Assistant Attorney General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617-963-2075
Elizabeth.Kaplan@mass.gov

Dated:  February 19, 2019

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

A.   Legal and Regulatory Background ...................................................................... 2

      1.   M.G.L. c. 62C, § 47B.............................................................................2

      2.   M.G.L. c. 62C, § 47A .............................................................................3

      3.   Request for Payment Agreement or Hardship Status .........................................3

B.   The McManns' Complaint.................................................................................... 5

ARGUMENT .................................................................................................................... 5

I.   THE COURT SHOULD DISMISS THE COMPLAINT FOR LACK OF STANDING
    AND BECAUSE IT IS UNRIPE ...................................................................................... 5

A.   The Plaintiffs Lack Standing to Challenge M.G.L. c. 62C, § 47B, because their Drivers'
    Licenses and Vehicle Registrations Have Been Reinstated Based on their Hardship Status. 6

B.   The Plaintiffs' Claims Concerning M.G.L. c. 62C, § 47A, also Warrant Dismissal on
    Standing and Ripeness Grounds. ......................................................................... 8

      1.   McMann's Real Estate License Was Inactive, He Never Sought to Reinstate It
          After Obtaining a Hardship Status, and His Undisclosed Wire Fraud
          Conviction May Prevent Him from Ever Reinstating It. ................................9

      2.   Under These Circumstances, McMann Cannot Demonstrate that He Has
          Standing to Pursue his Claims Against M.G.L. c. 62C, § 47A.......................11

      3.   In the Alternative, McMann's Claims Under M.G.L. c. 62C, § 47A, Are
          Unripe. ...............................................................................12

C.   The Complaint's Status as a Putative Class Action Does Not Change the Viability of the
    Claims. ................................................................................................... 14

II.   THE COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(b)(6)............ 15

A.   The Challenged Statutes Do Not Violate Due Process....................................... 16

B.   The Challenged Statutes Do Not Violate Equal Protection. ................................ 20

CONCLUSION................................................................................................................ 21

## INTRODUCTION

Defendants, Charles Baker, Jr., Stephanie Pollack, Erin Deveney, Christopher C. Harding, Charles Borstel, and Maura Healey, hereby move to dismiss the complaint.  The plaintiffs, Paul J. and Eileen R. McMann, filed this putative class action seeking to challenge the constitutionality of two Massachusetts statutes that aim to promote the collection of overdue state taxes:   (1) M.G.L. c. 62C, § 47B, which provides for suspension, revocation, non-issuance or non-renewal of a delinquent taxpayer's driver's license or motor vehicle registration; and (2) M.G.L. c. 62C, § 47A, which provides for suspension or revocation and non-renewal of a delinquent taxpayer's professional licenses.[1]  Specifically, plaintiffs claim that the challenged statutes violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution.

The plaintiffs' complaint must be dismissed for two reasons.  *First*, as detailed below, the plaintiffs' drivers' licenses and vehicle registrations have already been reinstated, eliminating any harm to them as a result of M.G.L. c. 62C, § 47B.  They therefore lack standing to pursue their claims concerning the constitutionality of that statute.  And, although plaintiff Paul McMann's license to practice as a real estate salesperson ("real estate license") has not been reinstated, for the reasons discussed below, the harm to him under M.G.L. c. 62C, § 47A, is limited and likely not redressable.  Therefore, he does not have standing to raise that claim.  Moreover, even if he did, the claim still would not be ripe, due to his failure to pursue a simple administrative procedure that might resolve the claim.  Thus, all of the claims should be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).  *Second*, even if the Court were to reach the merits of plaintiffs' claims, the claims should be dismissed under Fed. R. Civ. P. 12(b)(6) because the statutes are constitutional.

---

[1] The plaintiffs' complaint refers nowhere to M.G.L. c. 62C, § 47A, by citation, or any other specific identifier.  *See generally* Complaint ("Compl.").  However, because the complaint refers at various points to professional licenses that have been revoked or suspended pursuant to the "[s]tatutes," *see, e.g.*, Compl. ¶ 40, defendants construe the complaint as a challenge to M.G.L. c. 62C, § 47A.

1

# BACKGROUND

## A.    Legal and Regulatory Background

### 1.    M.G.L. c. 62C, § 47B

This statute provides for suspension or revocation of a Massachusetts taxpayer's driver's license and vehicle registration, where the taxpayer has "neglected or refused to file any returns or to pay any tax required."  M.G.L. c. 62C, § 47B(a).  If the Commissioner ("Commissioner") of the Massachusetts Department of Revenue ("DOR" or "Department") determines that a taxpayer is in arrears or has failed to file required returns, the Commissioner notifies the taxpayer, in writing, as well as the Massachusetts Registry of Motor Vehicles ("RMV").  *Id.*  The RMV then suspends or revokes the taxpayer's license and/or registration and prohibits their renewal until the taxpayer is in good standing.  *Id.*

A taxpayer who is at risk of losing his or her driver's license or vehicle registration under this statute may avoid these penalties by filing all returns due and paying all taxes owed, filing a good faith application for an abatement of the taxes due,[2] or entering into a payment agreement with the Commissioner and complying fully with it.  *See id.* § 47B(a), (b).  Further, the Commissioner must provide the taxpayer at least 30-days' notice of the impending suspension or revocation, giving the taxpayer an opportunity to resolve the issue through one of these methods.  *Id.* § 47B(b).  A taxpayer who does not or cannot pursue an abatement may appeal the notice of driver's license or vehicle registration suspension to the Massachusetts Superior Court under M.G.L. c. 30A, § 14.  *See* M.G.L. c. 62C, § 47B(b).  That appeal is limited to "assertions of mistake or verification of payments made," and is not an opportunity to challenge the amount of tax assessed.  *Id.*

---

[2] A taxpayer may only seek an abatement within three years from the date of filing the relevant tax return, within two years from the date of assessment, or within one year from the date the tax was paid, whichever is later.  M.G.L. c. 62C, §§ 37, 47B(b).

### 2.    M.G.L. c. 62C, § 47A

This statute similarly establishes penalties for holders of professional licenses in Massachusetts who fail to pay Massachusetts taxes or who fail to file tax returns. *See* M.G.L. c. 62C, § 47A.  Under the statute, every Massachusetts agency that issues professional licenses must regularly furnish to the Commissioner a list of all licenses issued during the preceding year. *Id.* § 47A(a).  The Commissioner then uses the lists to determine whether "any person who holds a [professional license] … has neglected or refused to file any returns or to pay any tax required." *Id.* § 47(d).  If the Commissioner determines that a professional licensee is delinquent in paying taxes due or filing tax returns, the Commissioner notifies the licensee, who may resolve the issue by paying the taxes owed, entering into a payment agreement, or filing a good faith abatement application. *Id.* § 47A(d), (e).  The Commissioner also notifies the relevant professional licensing agency of the tax delinquency. *Id.* § 47(A)(d).  If the licensee fails to resolve the issue, the professional licensing agency suspends or revokes the license, and may not renew or reissue it until the licensee obtains a certificate of good standing from the Commissioner. *Id.*  As under M.G.L. c. 62C, § 47B(b), a licensee may appeal a suspension under M.G.L. c. 62C, § 47A(d), pursuant to M.G.L. c. 30A, § 14, but may only argue "assertions of mistake or verification of payments made."[3]  *See* M.G.L. c. 62C, § 47A(e).

### 3.    Request for Payment Agreement or Hardship Status

As noted above, a delinquent taxpayer who seeks to avoid loss of a driver's license, vehicle registration, or professional license may enter into a payment agreement with the Commissioner, by which the taxpayer agrees to pay his or her tax liability in installments. *See* M.G.L. c. 62C, §§ 47B, 47A; *see also* M.G.L. c. 62C, § 37B(a) (authorizing Commissioner to enter into installment agreements, where "[C]ommissioner determines that such agreement will facilitate collection" of tax liability).  To request a payment agreement, a taxpayer must complete

---

[3] The Commissioner has promulgated regulations implementing M.G.L. c. 62C, § 47A. *See* 830 Code Mass. Regs. §§ 62C.47A.1, 62C.47A.2.  However, because, in practice, responsibility for implementing license suspensions and revocations under M.G.L. c. 62C, § 47A, falls to the various professional licensing agencies, these regulations are not enforced.

a form available on the Department's website and provide information regarding the taxpayer's financial circumstances and inability to pay the amount owed in full.[4]  The taxpayer must also file any additional required returns and "[p]ay in full any additional taxes that may come due during the term of the [p]ayment [a]greement."  DOR Collections FAQ at 5.  If the Commissioner learns that a taxpayer provided incomplete or inaccurate information in support of a request for a payment agreement, the Commissioner may terminate the agreement.  M.G.L. c. 62C, § 37B(a).  Likewise, if a taxpayer's financial circumstances change, or if the taxpayer fails to comply with the agreement, to pay additional taxes due, or to provide updated financial information as requested, the Commissioner may alter, modify, or terminate the agreement. M.G.L. c. 62C, § 37B(b), (c).

If a taxpayer is unable to make any payments toward an overdue tax liability, the taxpayer may request a hardship status from the Department.  DOR Collections FAQ at 5. Hardship status is available where payments on a tax liability "would cause the taxpayer the inability to pay immediate and necessary life expenses."  *Id.*  As with a payment agreement, a taxpayer seeking a hardship status must file any additional required returns, pay any taxes that come due, and provide financial information supporting the request for hardship.  *Id*. at 5-6. Hardship status is only approved on a temporary basis and is subject to periodic review.  *See id.* A delinquent taxpayer with an approved hardship status will not be subject to loss of driver's license or vehicle registration and may be able to avoid loss of any professional license, as discussed further below.  *See id.* at 5-6, 8-9.

---

[4] *See* Frequently Asked Questions Regarding DOR Collections, at 5-6, available at https://www.mass.gov/guides/frequently-asked-questions-regarding-dor-collections ("DOR Collections FAQ") (attached as Exhibit A).  *See also* Form M-433(I), Statement of Financial Condition for Individuals, available at https://www.mass.gov/files/documents/2017/12/08/dor-misc-form-m-433i.pdf (attached as Exhibit B); Form M-433(B), Statement of Financial Condition for Businesses, available at https://www.mass.gov/files/documents/2017/12/08/dor-misc-form-m-433b.pdf (attached as Exhibit C).

### B.     The McManns' Complaint

Prior to 2008, the plaintiffs, Paul and Eileen McMann, were engaged in real estate development.[5]  *See* Compl. ¶ 42.  The business was highly leveraged, and when the real estate market softened, the McManns lost most of the development and rental properties they owned. *See* Compl. ¶ 43.  The McManns' financial difficulties were further compounded when, in 2013, Paul McMann was convicted in this Court of three counts of wire fraud and incarcerated.  *See* Compl. ¶ 44; *United States v. Paul J. McMann*, Case No. 1:10-cr-10387-RWZ-1 (D. Mass.); *United States v. Paul J. McMann*, Case No. 13-2298 (1st Cir. 2014) (affirming conviction).

Due to their personal circumstances, the McManns had difficulty making ends meet.  *See* Compl. ¶ 48.  Among their unpaid debts were taxes that they owed to the Commonwealth and that they were unable to repay.  *See* Compl. ¶¶ 42, 49.  As a result of these unpaid taxes, and in accordance with the statutes discussed above, Paul McMann's driver's license, vehicle registrations, and real estate license were suspended, and Eileen McMann's driver's license was suspended.  *See* Compl. ¶¶ 62, 66, 71, 77, 78.  The McManns then filed the present complaint, which seeks a declaration that the statutes above violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution, as well as injunctive relief reinstating all licenses and vehicle registrations that have been revoked pursuant to the statutes and waiving all reinstatement fees.  *See* Compl. Request for Relief, pp. 24-25.

## ARGUMENT

## I.     THE COURT SHOULD DISMISS THE COMPLAINT FOR LACK OF STANDING AND BECAUSE IT IS UNRIPE

In adjudicating a motion to dismiss for lack of jurisdiction, the Court may look beyond the materials set forth in the complaint.  *See Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) ("The attachment of exhibits to a Rule 12(b)(1) motion does not convert it to

---

[5] The facts set forth in this section are drawn from the complaint and records of other proceedings of this Court.  *See Lopes v. Riendeau*, 177 F. Supp. 3d 634, 666-67 (D. Mass. 2016) and cases cited (courts "may … take judicial notice of judicial decisions").

a Rule 56 motion. While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion, such as the one in this case.").  Here, consideration of materials not disclosed in the complaint demonstrates that Paul and Eileen McManns' drivers' licenses and vehicle registrations have, in fact, been reinstated, due to the Department's determination that their financial situation warrants a hardship status.  Thus, they are not harmed as a result of M.G.L. c. 62C, § 47B, and have no standing to challenge that statute.  And, although Paul McMann's real estate license has not yet been reinstated, where he has not even attempted to reinstate that license, and where a favorable ruling from this Court may not even enable him to do so, he also lacks standing to raise his claims concerning that license, or, in the alternative, the claims are unripe.

A.      **The Plaintiffs Lack Standing to Challenge M.G.L. c. 62C, § 47B, because their Drivers' Licenses and Vehicle Registrations Have Been Reinstated Based on their Hardship Status.**

Article III of the U.S. Constitution limits federal courts' jurisdiction to certain "cases" and "controversies."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  Indeed, "no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976)).  If a dispute is not a proper case or controversy, "the courts have no business deciding it, or expounding the law in the course of doing so."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

One element of the "case-or-controversy requirement" is that plaintiffs "must establish that they have standing to sue."  *Raines*, 521 U.S. at 818.  As the party invoking federal jurisdiction, the plaintiffs have the burden of demonstrating Article III standing by establishing that they have suffered an "injury in fact," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), which must be "concrete, particularized, and actual or imminent; fairly traceable to the

defendant's challenged action; and redressable by a favorable ruling." *Horne v. Flores*, 557 U.S. 433, 445 (2009); *see Lujan*, 504 U.S. at 560-61.

Here, the plaintiffs cannot demonstrate that they are suffering any concrete, particularized, and actual or imminent injury related to M.G.L. c. 62C, § 47B, because their drivers' licenses and vehicle registrations have been reinstated pursuant to a hardship status that the Department approved for the McManns on September 12, 2018.[6]  *See* Affidavit of Michael P. Carballeira ("DOR Affidavit") ¶ 8 and Exhibits 2 (Hardship Status Approval) and 3 (Registry of Motor Vehicle Printouts).  In the notice informing the McManns of the approval, the Department indicated that it had accepted the McManns' request to enter into a hardship status for their outstanding tax liability, based on the Department's determination that they are "currently unable to pay [their] tax liability either in full or through a payment agreement without creating significant hardship for [them]."  DOR Affidavit Exhibit 2.  Therefore, the Department agreed to "stop active enforcement efforts" on their overdue account for a period of six months from the date of the notice, *id.*, and their drivers' licenses and vehicle registrations were reinstated.[7]  *See* DOR Affidavit Exhibit 3.  If the McManns' financial circumstances remain unchanged at the end of the six-month period, they may request that their hardship status be approved for another temporary period.  DOR Affidavit ¶ 4.

---

[6] Defendants note that when the McManns originally filed their complaint, in July 2018, they had not yet received their hardship status.  *See* Docket Entry No. 1.  However, they had received their hardship status by the time they served the complaint in November 2018.  *See* Docket Entry Nos. 14-19.  Thus, as an alternative to standing, the Court could consider the jurisdictional infirmity here as one of mootness.  *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome") (internal citation omitted).

[7] The Department can immediately reinstate a driver's license or vehicle registration that has been revoked or suspended pursuant to M.G.L. c. 62C, § 47B, once a taxpayer's debt has been repaid, or the taxpayer has entered into a payment agreement or been approved for a hardship license.  DOR Affidavit ¶ 6.  However, as discussed further below, the Department does not immediately reinstate professional licenses suspended due to M.G.L. c. 62C, § 47A, since these licenses may only be issued by the relevant professional boards.  *Id.* ¶ 7.

In short, the McManns are not suffering any current injury whatsoever related to their drivers' licenses and vehicle registration, because their licenses and registration are active. *See* DOR Affidavit Exhibits 2, 3. Insofar as they may lose these licenses in the future based on the Department's refusal to approve them for another hardship status period, that injury is merely hypothetical at this point. *See Lujan*, 504 U.S. at 560 (injury must be "actual or imminent, not conjectural or hypothetical" (citations and quotations omitted)). Finally, because their complaint seeks only forward-looking relief, any injury that the McManns may have suffered during a period when their licenses or vehicle registrations were suspended is irrelevant to the standing inquiry.[8] *See* Compl. Request for Relief at pp. 24-25.

## B. The Plaintiffs' Claims Concerning M.G.L. c. 62C, § 47A, also Warrant Dismissal on Standing and Ripeness Grounds.

Unlike his driver's license and vehicle registrations, Paul McMann's real estate license has not yet been reinstated.[9] However, as discussed below, the circumstances surrounding McMann's real estate license also dictate dismissal of his claims concerning M.G.L. c. 62C, § 47A. Specifically, McMann fails to satisfy the requirements of standing with respect to these claims, because any harm to McMann under this statute is far narrower than he alleges in the complaint and likely would not be redressed by a favorable court ruling. In the alternative,

---

[8] In a single enumerated paragraph prior to the request for relief, the complaint refers to a demand for "compensatory, statutory, exemplar and punitive damages" and alleges that "the McManns' claims arise under Massachusetts law and the Fair Debt Collection Practices Act ('FDCPA'), the Real Estate Settlement Procedures Act ('RESPA'), and the Truth in Lending Act ('TILA')." *See* Compl. ¶ 41. However, the complaint sets forth no allegations as to why exemplary or punitive damages are warranted or how the referenced statutes apply to this matter. *See generally* Compl. Thus, these claims fail to set forth anything more than mere "labels and conclusions," and are not proper claims for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And, insofar as the plaintiffs seek damages based on alleged violations of their constitutional rights under 42 U.S.C. § 1983, such claims must be dismissed because the only defendants in this matter have been sued in their official capacity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities" may be sued under § 1983).

[9] Paul McMann is the only named plaintiff who claims to have lost a professional license due to unpaid taxes, pursuant to M.G.L. c. 62C, § 47A. *See* Compl. ¶¶ 71-76. Therefore, all references to "McMann" in this section refer to him.

McMann's claim under M.G.L. c. 62C, § 47A, is unripe, because even if he is currently suffering from a redressable harm, that harm would be eliminated if McMann were to obtain a letter of compliance from the Department based on his hardship status.  Thus, any ruling on the constitutionality of the challenged statute is unnecessary and premature.  *Cf. Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

      1.      **McMann's Real Estate License Was Inactive, He Never Sought to Reinstate It After Obtaining a Hardship Status, and His Undisclosed Wire Fraud Conviction May Prevent Him from Ever Reinstating It.**

The records of the Board of Registration of Real Estate Brokers and Salespersons ("Board") show that McMann previously held a real estate license that expired in 2007.  *See* Affidavit of Kristin Mitchell ("Board Affidavit") ¶ 2 and Exhibit 1 (OASSIS Printout).  In November 2016, McMann sought to reinstate his license under "inactive" status, which was the only status open to him due to his failure to complete the mandatory continuing education requirements for an active license.  *See* Board Affidavit ¶ 3 and Exhibit 2 (Reinstatement Coupon); M.G.L. c. 112, § 87XX½; 254 Code Mass. Regs. § 5.00(4).  As a holder of an inactive license, he was permitted to receive referral fees based on referrals he made to real estate brokers with active licenses, but was not permitted to engage in real estate brokering or sales himself. M.G.L. c. 112, § 87XX½; 254 Code Mass. Regs. § 5.00(4).

The Board expired McMann's real estate license on August 3, 2017, based on a communication from the Department to the Board that McMann had unpaid taxes.[10]  Board Affidavit ¶ 4 and Exhibit 3 (E-licensing Printout); *see* DOR Affidavit ¶ 7.  Had McMann wanted to reinstate that license based on his approval for a hardship status, McMann could have contacted the Department to request a Certificate of Good Standing and/or Tax Compliance

---

[10] The real estate license would have been due for renewal on August 2, 2017, but because of the communication that the Board received from the Department, the Board did not renew it.  Board Affidavit ¶¶ 3, 4 and Exhibit 2.

("Certificate"), which, if granted, would have generated a memorandum from the Department to the Board indicating that McMann was eligible for reinstatement.  DOR Affidavit ¶ 7.  He never made such a request.  DOR Affidavit ¶ 9; *see* Board Affidavit ¶ 5.

Furthermore, were McMann to attempt to reinstate his real estate license now, whether in active or inactive status, it is at best unclear whether the Board would do so regardless of the status of McMann's taxes, because the Board has no record of McMann disclosing to the Board his 2013 conviction of wire fraud.[11]  Board Affidavit ¶ 6; *United States v. Paul J. McMann*, Case No. 1:10-cr-10387-RWZ-1 (D. Mass.).  This is problematic for at least two reasons.  First, had he disclosed his conviction at the time of or prior to his 2016 request for reinstatement, the Board may not have reinstated his license, because Board licensees must demonstrate good moral character, *see* M.G.L. c. 112, § 87TT, and comply with all laws related to the practice of their profession.  *See* M.G.L. c. 112, § 61(4) (professional boards may suspend or revoke a license where licensee has "been convicted of a criminal offense which is reasonably related to the practice of the profession"); *see also* M.G.L. c. 112, § 87AAA; 254 Code Mass. Regs. § 3.00(14)(f).  At minimum, he would have had to appear before the Board to explain why he still qualified for a real estate license despite having been convicted of wire fraud, a crime which inherently calls into question his honesty in business transactions.  Board Affidavit ¶ 6; *see* G.L. c. 112, § 61(4), (5) (permitting sanctions for criminal offenses and for "dishonesty, fraud, or deceit which is reasonably related to the practice of the profession").  Second, if McMann were to request reinstatement of his license now, he may also be subject to discipline for violating Board regulations that require licensees to report criminal convictions to the Board within 30 days.[12]  *See* 254 Code Mass. Regs. § 3.00(14)(g).  The Board has previously revoked real estate

---

[11] The Board only learned of McMann's conviction of wire fraud in the course of responding to the present complaint.  Board Affidavit ¶ 7.

[12] Convictions that must be reported are "any misdemeanor or felony under the law of the Commonwealth, the United States or laws of another jurisdiction which if committed in Massachusetts would constitute a crime under Massachusetts law."  254 Code Mass. Regs. § 3.00(14)(g).

licenses for failure to disclose convictions, *see, e.g.*, *Matter of Hyde*, Board Record No. 2016-000629-IT-ENF (involving convictions of filing false motor vehicle insurance claims and other crimes) (attached as Exhibit D), and the Massachusetts Supreme Judicial Court has affirmed suspensions of other professional licenses on this basis. *See, e.g., Kaplan v. Board of Public Accountancy*, 452 Mass. 1026, 1027 (2008) (no abuse of discretion or other error where professional licensing board suspended licensee based on felony conviction of larceny over $250 and false denial of conviction on license renewal application).

### 2.     Under These Circumstances, McMann Cannot Demonstrate that He Has Standing to Pursue his Claims Against M.G.L. c. 62C, § 47A.

McMann cannot demonstrate that he has standing to raise his constitutional claims concerning M.G.L. c. 62C, § 47A, because he cannot demonstrate that he is suffering a concrete injury under the statute that would be redressable by a favorable ruling from this Court on his constitutional claims. *See Lujan*, 504 U.S. at 560. As a preliminary matter, the injury alleged in the complaint that relates to McMann's lost real estate license is not, in fact, an injury at all. Specifically, the complaint alleges that McMann has missed "opportunities to practice and sell real estate," Compl. ¶ 76, but as discussed above, prior to his recent suspension for unpaid taxes, he held only an inactive license. *See* Board Affidavit Exhibit 2. Thus, he was prohibited from brokering or selling real estate, and his present injury extends at most to his inability to collect fees for referrals he makes to actively licensed brokers and salespersons. *See* M.G.L. c. 112, § 87XX½; 254 Code Mass. Regs. § 5.00(4). The complaint makes no allegations that he has forgone such opportunities, or that he anticipates doing so in the future. *See* Compl. ¶¶ 71-76. Therefore, at least as currently pled, the complaint fails to allege any injury that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted).

More importantly, even if McMann were to amend his complaint to allege injury due to missed opportunities for referral fees, that injury is not redressable through this lawsuit because, as discussed above, even if he were to succeed on his constitutional claims, he may not be able to

regain his real estate license.  Although McMann need not demonstrate that success in this case would resolve his "every injury," he must still show that success would relieve some "discrete injury to himself."  *Massachusetts v. Envtl. Prot. Agency*, 549 U.S. 497, 525 (quoting *Larson v. Valente*, 456 U.S. 228, 244 n.15 (1982) (emphasis omitted)).  He cannot do that, because even if he were to obtain a favorable ruling from this Court, that ruling would address only the question whether his license could be suspended for unpaid taxes.  In order to actually regain his license, he would still need to appear before the Board to demonstrate that he qualifies for relicensing.  *See* Board Affidavit ¶¶ 6, 8.  For the reasons discussed above, the Board may conclude that McMann's conduct violates multiple statutes and regulations, and the Board may ultimately revoke McMann's license or impose a lengthy suspension.  *See* pp. 10-11 *supra*.  Thus, a favorable ruling from this Court would not improve his circumstances in even partial fashion, since other factors may well prohibit his reinstatement.  *See Lujan*, 504 U.S. at 561 ("it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'" (internal citation and quotation marks omitted)).

### 3. In the Alternative, McMann's Claims Under M.G.L. c. 62C, § 47A, Are Unripe.

Alternatively, even if the Court were to conclude that McMann's present circumstances satisfy the requirements of standing because his license was expired due to unpaid taxes, the Court should nevertheless dispose of McMann's claims under M.G.L. c. 62C, § 47A, on ripeness grounds.  "There are two factors to consider in determining ripeness: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"  *Roman Catholic Bishop of Springfield v. Springfield*, 724 F.3d 78, 89 (1st Cir. 2013) ("*Springfield*") (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).  The first or "fitness" prong includes an Article III component of "prevent[ing] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements," *Mangual v. Rotger-Sabat*, 317 F.3d 45, 59 (1st Cir. 2003) (quoting *Abbott*, 387 U.S. at 148), as well as a prudential interest in avoiding "unnecessary decision of constitutional issues."  *Mangual*, 317 F.3d at 59 (quoting

*Reg'l Rail Reorganization Act Cases*, 419 U.S. 138 (1974).  The Court "generally require[s] both prongs to be satisfied in order for a claim to be considered ripe."[13]  *Springfield*, 724 F.3d at 89. Where McMann may be able to obtain a letter of compliance that would fully resolve the current issue related to his unpaid taxes, the present claim satisfies neither.

"[T]he critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all."  *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 536 (1st Cir. 1995) (citation and quotation omitted).  That is the case here.  Because McMann has received a hardship status, as discussed above, he may contact the Department and request a Certificate; if the Certificate is granted, the Department would then generate a memorandum to the Board informing it that McMann's real estate license no longer need remain suspended due to his unpaid taxes.  *See* DOR Affidavit ¶ 7.  This would eliminate any conceivable harm to McMann putatively resulting from M.G.L. c. 62C, § 47A, rendering moot his claim concerning the constitutionality of that statute.  Conversely, any argument McMann might make regarding the possibility that the Department might not issue him a letter of compliance or might not extend his hardship status for another period[14] hinges on events that are presently uncertain and remote.[15]  *See Ernst & Young*, 45 F.3d at 537 (legal claim that "depends upon future events that may never come to pass, or that may not occur in the form forecasted … is unripe").  And from a prudential perspective, these facts clearly counsel against the Court ruling on the constitutionality of M.G.L. c. 62C, § 47A, where such a ruling might be unnecessary.  *See Ernst & Young*, 45 F.3d at 538.

---

[13] Although the Supreme Court has "cast a measure of doubt upon ripeness's prudential dimensions," the First Circuit still considers them.  *Reddy v. Foster*, 845 F.3d 493, 501 n.6 (1st Cir. 2017) (citing *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014)).

[14] McMann's current hardship status is set to expire on March 12, 2018.  *See* DOR Affidavit Exhibit 2.

[15] Insofar as the Board might refuse to reissue McMann's real estate license for reasons having nothing to do with his taxes, namely, his previously undisclosed conviction, such reasons are unrelated to M.G.L. c. 62C, § 47A, and provide no basis for the Court to adjudicate McMann's constitutional claims concerning this statute.

13

Likewise, denying McMann a constitutional ruling at this time creates no "direct and immediate" hardship to him. *See id.* at 536. Since the Department has already granted him a hardship status, nothing prevents him from requesting a Certificate, which is simply a matter of completing the application. *See* DOR Affidavit ¶ 7 and Exhibit 1 (Application for Certificate). Any delay in McMann obtaining the Certificate is therefore, at this point, entirely due to him, and the denial of a constitutional ruling does not harm him at all. There is thus no reason why the Court should wade into the constitutionality of a state statute prematurely in this case, where straightforward administrative procedures may resolve the issue, and if they do not, it is because of McMann's circumstances that have nothing to do with the operation or the constitutionality of the statute.

### C. The Complaint's Status as a Putative Class Action Does Not Change the Viability of the Claims.

The plaintiffs may argue that they have styled their complaint as a putative class action, and that therefore they need not show that they personally can demonstrate standing or ripeness to raise their claims, because other class members may have standing and/or ripe claims. *See* Compl. ¶¶ 104-13. Such arguments lack merit. "That a suit may be a class action … adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) (citation and quotation omitted); *see O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *cf. Pruell v. Caritas Christi*, 645 F.3d 81, 83-84 (1st Cir. 2011) (remanding putative class action to district court to determine whether subject-matter jurisdiction existed as to named plaintiffs; fact that jurisdiction existed as to at least some members of putative class was insufficient). Similarly, a putative class may not demonstrate that its claims are ripe based solely on the theory that there may be some unnamed class members

14

with ripe claims.  *See Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 66-67 (1993) (where

only class members who had been subjected to "front-desking" policy would have had ripe

claims, Court remanded for determination as to which class members had in fact been "front-

desked").

Further, to certify their case as a class action, plaintiffs would need to demonstrate that

their claims are "typical" of those of the other members of their proposed class.  *See* Fed. R. Civ.

P. 23(a).  Plaintiffs likely cannot do so where, as here, they cannot show that the statutes they

challenge harm them personally, or at minimum any harm to them may be mitigated through

simple administrative procedures that they have not pursued.  *Cf. Hines v. Widnall*, 334 F.3d

1253, 1256 (11th Cir. 2003) (analysis of standing precedes analysis of class certification, because

"[w]ithout individual standing to raise a legal claim, a named representative does not have the

requisite typicality to raise the same claim on behalf of a class").

## II.    THE COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(b)(6)

The complaint also warrants dismissal under Fed. R. Civ. P. 12(b)(6) because it "fail[s] to

state a claim upon which relief can be granted."  *Id.*  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

at 570).  The plaintiff's duty "to provide the 'grounds' of his 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Twombly*, 550 U.S. at 555.  In particular, "the tenet that a court must accept as true

all of the allegations contained in a complaint is inapplicable to legal conclusions."[16]  *Iqbal*, 556

---

[16] In adjudicating defendants motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court can
consider "not only the complaint but also matters fairly incorporated within it and matters
susceptible to judicial notice" without converting this motion to dismiss into a motion for
summary judgment.  *Greene v. Rhode Island*, 398 F.3d 45, 48 (1st Cir. 2005) (citation and
quotation omitted).  Such matters include "documents the authenticity of which are not disputed
by the parties; ... official public records; ... documents central to plaintiffs' claim; ... [and]
documents sufficiently referred to in the complaint."  *Alt. Energy, Inc. v. St. Paul Fire & Marine
Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (citation and quotation omitted); *accord In re Colonial
Mortgage Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003) ("[M]atters of public record are fair

U.S. at 678; *see Lemelson v. U.S. Bank Nat'l Ass'n*, 721 F.3d 18, 21 (1st Cir. 2013) (court must disregard "statements in the complaint that merely offer legal conclusions couched as fact") (citation, internal brackets, and ellipses omitted).  Plaintiffs fail to meet these standards because, for the reasons discussed below, the challenged statutes are constitutional.[17]

### A.     The Challenged Statutes Do Not Violate Due Process.

In its first and second causes of action, the complaint raises procedural and substantive due process challenges to the statutes at issue in this case.  *See* Compl. ¶¶ 114-17.  Both counts should be dismissed, because the statutes comply with due process principles.  Turning first to the procedural due process claims, plaintiffs "must identify a protected liberty or property interest … and allege that the defendants, acting under color of state law, deprived [them] of that ... interest without constitutionally adequate process."  *Aponte-Torres v. University of Puerto Rico*, 445 F.3d 50, 56 (2006) (1st Cir. 2006) (citations and quotation omitted).  Here, defendants

game in adjudicating Rule 12(b)(6) motions, and a court's reference to such matters does not convert a motion to dismiss into a motion for summary judgment.").  Under these principles, this Court has treated material from government websites as a matter of public record that may be considered on a motion to dismiss.  *See, e.g., Wilson v. Clinton*, 2018 WL 4441241, No. 2:17-cv-00409-GZS, *1 n.2 (D. Me. 2018) (magistrate's recommended decision treating prison grievance policy as matter of public record); *Alston v. Town of Brookline, Massachusetts*, 2017 WL 1536213, No. 15-13987-GAO, *1 n.2 (D. Mass. 2017) (adopting magistrate's recommended decision, which took judicial notice of town meeting information posted on town's website).

[17] Again, the fact that the plaintiffs have pled this case as a putative class action does not prevent the Court from dismissing the litigation at this stage.  Although Fed. R. Civ. P. 23(c)(1) requires the Court to determine whether to certify a class at "[a]n early practicable time," *id.*, the Court may, in appropriate circumstances, rule on the merits of a defendant's dispositive motion prior to taking up the issue of class certification.  *See, e.g., Danny B. ex rel. Elliott v. Raimondo*, 784 F.3d 825, 837-38 (1st Cir. 2015) ("Rule 23 permits a district court, in appropriate circumstances, to defer the issue of class certification until after disposing of summary judgment motions."); *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92 (D.C. Cir. 2001) ("the order of disposition of motions for summary judgment and class certification [is] a question of discretion for the trial court"); *In re Columbia Entities Litig.*, 2005 WL 6776751, No. 04-11704-REK, *11 (D. Mass. 2005) (where all plaintiffs' claims warranted dismissal under Fed. R. Civ. P. 12(b)(6), plaintiffs' pending motion for class certification was dismissed as moot).  Here, none of the counts set forth in the complaint state a claim on which relief could be granted, regardless of whether this Court were to certify a class in this case.  Thus, resolution of the defendants' motion to dismiss is appropriate at this stage and will "spare[] both the parties and the court a needless, time-consuming inquiry into certification."  *Curtin*, 275 F.3d at 92.

assume that plaintiffs can demonstrate that the challenged statutes implicate a constitutionally protected liberty or property interest, since due process protections apply to revocations or suspensions of drivers' licenses, *see Dixon v. Love*, 431 U.S. 105, 112 (1971), and professional licenses, *see Lowe v. Scott*, 959 F.2d 323, 334-35 (1st Cir. 1992).  However, given the multiple procedures available for delinquent taxpayers to avoid loss of their licenses, plaintiffs cannot show that the process for revoking or suspending licenses under the challenged statutes is constitutionally inadequate.

"[I]t is well-settled that the essential requirements of procedural due process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010) (quoting *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir.1990)).  But the precise procedures required are flexible and depend on the situation at hand.  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  Therefore, "[d]etermining what process is due requires balancing three factors: '[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.'"  *Collins v. University of New Hampshire*, 664 F.3d 8, 18 (1st Cir. 2011) (quoting *Gilbert v. Homar*, 520 U.S. 924, 931–32, (1997)); *see Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

In this case, the challenged statutes comply with due process requirements because they provide notice of impending loss of licenses or vehicle registrations and an opportunity to contest the validity of the penalty.  Specifically, both statutes require the Commissioner to give the taxpayer "not less than 30 days notice of any proposed action."[18]  M.G.L. c. 62C, § 47A(e);

---

[18] McMann alleges that he did not, in fact, learn of the loss of his real estate license until February 12, 2018, after the Board had expired it.  *See* Compl. ¶ 71.  Although defendants recognize that matters outside the complaint and not susceptible to judicial notice generally are not considered in a Fed. R. Civ. P. 12(b)(6) motion, *see Colonial Mortgage Bankers Corp.*, 324 F.3d at 15, defendants note that when McMann renewed his real estate license in 2016, he signed a statement indicating that he was "in compliance with all laws of the Commonwealth relating to taxes," placing him on notice that payment of his taxes was required to maintain his license.  *See*

*accord* M.G.L. c. 62C, § 47B(b).  The taxpayer then has several avenues through which to avoid loss of licenses or vehicle registrations.  First, if the taxpayer has a good faith basis to contest the assessment of the taxes owed and is within the statutory time period for requesting an abatement, the taxpayer may file an abatement application, which stays the revocation or suspension of the taxpayer's licenses and registrations "until the amount of disputed tax due is finally determined." M.G.L. c. 62C, § 47A(e); *accord* M.G.L. c. 62C, § 47B(b).  An applicant for an abatement may request a hearing on the application,[19] *see* M.G.L. c. 62C, § 37; 830 Code Mass. Regs. § 62C.37.1(7), and may appeal if the abatement is denied.  *See* M.G.L. c. 62C, § 39; 830 Code Mass. Regs. § 62C.37.1(8).  Alternatively, a taxpayer who is at risk of being penalized under the challenged statutes and who cannot pursue an abatement, but who believes that the Commissioner has made an error on the taxpayer's account, may file a civil action in the Massachusetts Superior Court under M.G.L. c. 30A, § 14.  *See* M.G.L. c. 62C, § 47A(e) (limiting the scope of appeal to "assertions of mistake or verification of payments made"); M.G.L. c. 62C, § 47B(b) (same).  Any stay of the loss of licenses or registrations is within the discretion of that court.  *See* M.G.L. c. 62C, § 47A(e); M.G.L. c. 62C, § 47B(b).

Thus, in circumstances where the taxpayer seeks to challenge the factual premise for a penalty under M.G.L. c. 62C, §§ 47A or 47B, the statutes provide ample opportunity to raise that challenge through an administrative hearing with appeal rights or a civil lawsuit.  Depending on

---

Board Affidavit Exhibit 2.  And the Department sent the McManns numerous notices reminding them of their unpaid tax liabilities, beginning at least as early as 2010, so McMann should have known that failure to pay the taxes would place his license at risk.  *See* DOR Affidavit ¶ 8. Further, McMann's reinstatement coupon indicated that his license was due for renewal on August 2, 2017, so he also should have known that if he did not renew the license at that time, it would expire.  *See* Board Affidavit Exhibit 2.  Where McMann was on notice regarding his tax debt, the requirement that he comply with the tax laws, and the date that his license would expire, and where he ultimately preserved his rights by requesting and obtaining a hardship status, any lack of advance notice to him regarding the loss of his real estate license was harmless.

[19] The one exception to the availability of a hearing on an application for an abatement is that if the applicant already had a hearing prior to the assessment of the tax, the applicant is not entitled to a second hearing.  *See* M.G.L. c. 62C, § 37; 830 Code Mass. Regs. § 62C.37.1(7).

the taxpayer's basis for contesting the penalty, the taxpayer may be able to avoid license loss until any dispute is resolved. *See* M.G.L. c. 62C, § 47A(e); M.G.L. c. 62C, § 47B(b). In this manner, even if the private interests at issue here are significant, the statutes and regulations offer several opportunities for the taxpayer to be heard that clearly reduce the risk of erroneous deprivation. *See Collins*, 664 F.3d at 18. And, as the Ninth Circuit noted in upholding the constitutionality of a California statute similar to M.G.L. c. 62C, § 47B,[20] the government "obviously has a strong interest in revenue collection," which justifies the loss of licenses where a taxpayer has, in fact, failed to pay taxes. *Franceschi v. Yee*, 887 F.3d 927, 937 (9th Cir. 2018). There, the Court concluded that the plaintiff had not suffered a procedural due process violation, because he could have avoided his driver's license suspension by paying the taxes he owed and then filing a claim for a refund.[21] *Id.* at 936-37.

      Nevertheless, the plaintiffs here allege that the statutes violate procedural due process because they do not offer "the opportunity to contest the suspension or revocation of [plaintiffs'] licenses by presenting proof that they are willing to pay but are currently unable to pay taxes." Compl. ¶ 117. These allegations ignore the fact that a taxpayer who is unable to pay the full amount of the taxes due may avoid loss of licenses by entering into and complying with a payment agreement. *See* M.G.L. c. 62C, § 47A(d); M.G.L. c. 62C, § 47B(a). And a taxpayer who cannot afford to pay anything at all may request a hardship status from the Department. DOR Collections FAQ p. 5-6. In sum, the procedures that are available to avoid the loss of licenses and vehicle registrations are more than adequate from a constitutional perspective; that plaintiffs failed to available themselves of some or all of these procedures does not render them

---

[20] Under the California scheme, the state Franchise Tax Board publishes a list of the top 500 largest tax delinquencies over $100,000, and state licensing entities "shall suspend" a license if the licensee's name appears on the list. *Franceschi*, 887 F.3d 933-34.

[21] A Massachusetts taxpayer may also challenge the validity of a tax by paying the tax and seeking an abatement within one year after the date of payment. *See* M.G.L. c. 62C, § 37 (abatement may be requested "within [one] year from the date that the tax was paid"). Based on the allegations in the complaint, this procedure is unavailable to plaintiffs as a practical matter, since they are financially unable to pay the taxes they owe. *See* Compl. ¶¶ 42, 54, 100.

constitutionally infirm.  *See, e.g.*, *Boston Envtl. Sanitation Inspectors Ass'n v. City of Boston*, 794 F.2d 12, 13 (1st Cir. 1986) (per curiam) (parties "cannot complain of a violation of procedural due process rights when [they] have made no attempt to avail themselves of existing state procedures").

As for plaintiffs' claims that the challenged statutes violate substantive due process, *see* Compl. ¶¶ 114-15, to sustain such a claim, plaintiffs must "prove that they suffered the deprivation of an established life, liberty, or property interest, *and* that such deprivation occurred through governmental action that shocks the conscience."  *Najas Realty, LLC v. Seekonk Water District*, 821 F.3d 134, 145 (1st Cir. 2016) (citation and quotation omitted) (emphasis in original).  To shock the conscience, the challenged conduct must be "egregious" and "outrageous," *Melendez-Garcia v. Sanchez*, 629 F.3d 25, 37 (1st Cir. 2010) (citation and quotation omitted), such as conduct that is "*intended* to injure in some way *unjustifiable* by any government interest," *Rivera v. Rhode Island*, 402 F.3d 27, 36 (1st Cir. 2005) (citation and quotation omitted) (emphasis in original).  No such offensive conduct is at issue here.  The challenged statutes require forfeiture of plaintiffs' licenses[22] specifically as a consequence of plaintiffs' failure to pay their taxes, a matter in which the state clearly has a strong interest.  *See Franceschi*, 887 F.3d at 939.  And, as discussed above, plaintiffs can regain their licenses by paying their taxes, filing a good faith abatement application, appealing under M.G.L. c. 30A, § 14, entering into a payment agreement, or being approved for a hardship status.  There is no substantive due process violation.

**B.     The Challenged Statutes Do Not Violate Equal Protection.**

Finally, plaintiffs allege that the challenged statutes violate equal protection because certain individuals who have lost their driver licenses due to serious traffic infractions may be

---

[22] In the complaint, plaintiffs claim that the challenged statutes violate substantive due process only with respect to the suspension or revocation of drivers' licenses.  *See* Compl. ¶ 115.  However, for the reasons discussed above, there is no substantive due process violation with respect to any of the licenses at issue in this case.

eligible for hardship licenses, while those who have lost their drivers' licenses, professional licenses, or vehicle registrations may not.  *See* Compl. ¶¶ 118-21; *see also* M.G.L. c. 90, § 24(c) (permitting Registrar of Motor Vehicles, in her discretion, to issue hardship licenses with restrictions to drivers convicted of operating under the influence, provided certain requirements are met); *id.*, § 22F (permitting similar availability of hardship licenses for habitual traffic offenders).  This claim fails on two levels.  First, as discussed above, plaintiffs may restore their drivers' licenses without any restrictions by entering into a payment agreement with the Department, *see* M.G.L. c. 62C, § 47B(a), or by obtaining a hardship status from the Department.  *See* DOR Collections FAQ p. 8-9.  And second, even if this were not the case, "a classification neither involving fundamental rights nor proceeding along suspect lines ... cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."  *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 680 (2012) (citation and quotation omitted).  Under these principles, a tax statute that does not discriminate based on a suspect classification or the exercise of a fundamental right is subject only to rational basis review, meaning that the law will be upheld if "there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *Id.* at 681 (citation and quotation omitted).  Here, where the Massachusetts Legislature has imposed the challenged laws to create a strong disincentive for people to flout their tax obligations and to maximize the recovery of unpaid tax liabilities, and where other statutory penalties exist for serious traffic offenders, including, in some circumstances, criminal convictions and jail time, a rational basis clearly supports any legislative determination to treat the two groups differently.  *Cf. Franceschi*, 887 F.3d at 940-41 (rejecting equal protection to California statute).

## CONCLUSION

For the reasons stated above, plaintiffs' complaint should be dismissed in its entirety.

Respectfully submitted,

CHARLES BAKER, JR., in his official
capacity as Governor of Massachusetts;
STEPHANIE POLLACK, in her official
capacity as Secretary of Transportation;
ERIN DEVENEY, in her official capacity as
Registrar at Massachusetts Department of
Transportation; CHRISTOPHER C.
HARDING, in his official capacity as
Commissioner of the Massachusetts
Department of Revenue; CHARLES
BORSTEL, in his official capacity as
Director of the Division of Profession
Licensure; and MAURA HEALEY, in her
official capacity as Attorney General of the
Commonwealth of Massachusetts,

By their attorney,

MAURA HEALEY
ATTORNEY GENERAL,


*/s/ Elizabeth Kaplan_____*
Elizabeth A. Kaplan, BBO #568911
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617-963-2075
Elizabeth.Kaplan@mass.gov

February 19, 2019

## **CERTIFICATE OF SERVICE**

     I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on February 19, 2019.

/s/ Elizabeth Kaplan
Elizabeth Kaplan
